# EXHIBIT A

KAREN INFANTE ALLEN
TRUMBULL CO CLERK OF COURTS
2023 CV 01278 RJR
FILED: 08/25/2023 01:57 PM

## IN THE TRUMBULL COUNTY COMMON PLEAS COURT
## WARREN, OHIO

| | | |
|---|---|---|
| Michael Haydu | : | |
| 438 N. Rhodes Avenue | | |
| Niles, Ohio 44446 | : | CASE NO. |
| | | |
| Plaintiff, | : | |
| | | JUDGE: |
| -vs- | : | |
| | | |
| Assent Mortgage, LLC | : | |
| d/b/a LendBee | | |
| 18881 Von Karmon, Unit #1075 | : | |
| Irvine, CA 92612 | | |
| | : | |
| and, | | |
| | : | |
| Amity One Debt Relief, Inc. | | |
| c/o Paracorp Incorporated, | : | |
| Statutory Agent | | |
| 2804 Gateway Oaks Dr, #100 | : | |
| Sacramento, CA 95833 | | |
| | : | |
| and, | | |
| | : | |
| Guardian Litigation Group, PLLC | | |
| 17922 Fitch, Ste 150 | : | |
| Irvine, CA 92614 | | |
| | : | |
| Defendants. | | |
| | : | |

---

## COMPLAINT AND REQUEST FOR DECLARATORY
## RELIEF AND JURY DEMAND

Plaintiff MICHAEL HAYDU states the following claims for relief:

### Introduction

The Fair Credit Reporting Act ("FCRA"), 15 U.S.C, Section 1681b(f) regulates the access

and use of consumer reports in order to protect consumer privacy. This case involves the illegal

use of and access to the private financial data in the consumer reports of likely tens of thousands

of financially distressed consumers. The information was accessed for the illegal purpose of marketing debt settlement and/or consolidation services. Defendants obtained lists of consumer data, lists referred to as "pre-screened lists," including Plaintiff's. Defendants used the lists to market debt settlement services.

The pre-screened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See, Trans Union v FTC,* 245 F.3d 809 (U.S. App. D.C. 2001).

The pre-screened lists at issue are compiled by a consumer reporting agency using filters including a base level of unsecured debt balances, a minimum level of unsecured trade lines, and various other filters bearing on a consumer's credit worthiness. The pre-screened lists constitute consumer reports that may only be accessed and used for a permissible purpose. *See*, 15 U.S. C. Section 1681b(f); *See, Trans Union v FTC,* 245 F.3d 809 (U.S. App. D.C. 2001).

Accordingly, Plaintiff MICHAEL HAYDU brings this action to obtain monetary damages, injunctive relief, attorneys' fees, his costs in this action and any other relief to which he may be entitled to compensate him for Defendants' violations of the Fair Credit Reporting Act, 15 U.S.C, §§1681, et seq., ("FCRA") the Ohio Consumer Sales Practices Act, Oh. Rev. Code §§1345.01 to 1345.99 ("OCSPA"), the Equal Credit Opportunity Act, 15 U.S.C §1691 ("ECOA"), fraud, and civil conspiracy all of which were violated as part of a venture to advertise, promote and operate a business of soliciting clients for debt settlement and credit repair.

### Jurisdiction and Venue

1.  This Court has venue to hear this case pursuant to Ohio Civ. R. 3(B)(3), in that some of the

transactions complained of, and out of which this action arose, occurred in Trumbull County, Ohio, where Plaintiff resides.

2. The transactions and occurrences which give rise to this action occurred in Trumbull County, Ohio.

3. Venue is proper in the Trumbull County Common Pleas Court.

4. Defendants regularly engage in business with, and direct business at, Ohio consumers and have otherwise availed themselves of the Ohio marketplace and secured the benefits of that marketplace. Such conduct includes, among other things, holding themselves out as debt settlement and credit repair companies providing services to Ohio residents; directing business solicitations into the State of Ohio, directed at indebted Ohio residents; seeking participation in Defendants' debt settlement and credit repair programs; contracting in Ohio with Ohio consumers for various services including debt settlement and credit repair; offering to perform and/or performing activities for Ohio residents including debt settlement and credit repair functions.

5. Specifically, all Defendants had actual knowledge or acted with reckless disregard as to the deceptive nature of the mailing, the illegal nature of the data used in the mailing campaign at issue, that a portion of the mailers were directed to Ohio consumers (including Exhibit A).

6. All Defendants, acting in concert, conspired to illegally obtain protected consumer reporting data and mail to tens of thousands of Ohioans the illegal solicitations at issue in this Complaint, or substantially similar solicitations.

7. All Defendants intentionally targeted thousands of Ohioans at their residential addresses located in the State of Ohio and knew their conduct would injure these consumers in the State of Ohio.

8. Each Defendant played a significant and necessary role in the conspiracy described in this

Complaint.

9. This Court has jurisdiction over the parties and the subject matter of this action.

10. The Plaintiff to this lawsuit is Michael Haydu ("Haydu"), who resides at 438 North Rhodes Avenue, Niles, Ohio 44446 in Trumbull County, Ohio.

11. The Defendants to this lawsuit are as follows:

(a) Assent Mortgage, LLC d/b/a LendBee ("LendBee") which is a California limited liability company doing business in Ohio and located at 2525 Main Street, Ste 300, Irvine, CA 92614 and whose statutory agent is Mahyar Kazemi who maintains an address at 1590 S. Coast Highway, Suite #7, Laguna Beach, CA 92651.

(b) Amity One Debt Relief, Inc.("Amity One") which is a corporation doing business in Ohio and maintaining an address at 2525 Main Street, Ste 300, Irvine, CA 92614 and whose statutory agent is Paracorp Incorporated who maintains its address at 2804 Gateway Oaks Drive, #100, Sacramento, CA 95833.

(c) Guardian Litigation Group, PLLC which is a California professional corporation doing business in Ohio and located at 17922 Fitch, Ste 150, Irvine, CA 92614.

12. For the purposes of this Complaint, unless otherwise indicated, "Defendant" or "Defendants" includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of Defendants named in this caption.

13. Defendants, acting in concert with each other, unlawfully obtained Haydu's consumer report and used it to illegally obtain information for the purpose of sending deceptive solicitations for debt adjustment/debt settlement and credit repair services. Defendants have misused the illegally obtained data of Plaintiff as well as likely tens of thousands of Ohioans.

14.     As such, Plaintiff seeks damages for the harm caused by Defendants' unlawful acts and a declaration that Defendants have acted unlawfully.

### Statement of Facts

15.     All named Defendants engaged in a scheme to obtain and use protected consumer reporting data to market debt settlement and credit repair services via mailers directed to Haydu in the State of Ohio.

16.     To that end, LendBee, Amity One and Guardian through an authorized agent, and with the knowledge and at the direction of both Defendants, compiled or directed an agent to compile a "pre-screened list" containing the names and addresses of consumers in financial distress.

17.     LendBee, Amity One obtained and used these pre-screened lists containing the names and addresses of consumers who met certain criteria such as minimum debt balances or high interest rates, etc.; Haydu was on at least one of these lists.

18.     These lists are compiled by a consumer reporting agency using the filters supplied to the consumer reporting agency by Defendants' marketing agent. LendBee and Amity One use the direct marketing campaign to obtain clients on behalf of Guardian Litigation Group, PC ("Guardian").

19.     All Defendants engage in a debt settlement model that has come to be known as the "attorney model." Debt settlement companies believe that if the debt settlement is being performed by a law firm, the companies do not have to comply with various state laws designed to regulate debt settlement companies.

20.     The lists used to market the "attorney model" debt settlement scheme constitute consumer reports under the FCRA.

21.     LendBee, Amity One and Guardian then arranged for the preparation and mass mailing of marketing letters to the consumers on the pre-screened lists obtained from the consumer reporting agency.

22.     Haydu received one of the mailed solicitations, which is attached as Exhibit A and incorporated herein.

23.     Defendants' representations on the mailer, and during the debt settlement pitch in response to the mailer provides proof the mailer was populated with data from a consumer report. Some of the relevant language is as follows:

(a)     On the front of the mailer, LendBee provides the standard prescreen and opt out language stating: "You can choose to stop receiving 'prescreened' offers of credit from this and other companies by calling toll-free 1-888-567-8688. See PRESCREEN & OPT-OUT NOTICE on the other side for more information about prescreened offers."

(b)     Likewise, on the back of the mailer is the long version of the prescreen and opt-out notice, which is required to be placed in such a marketing piece when using prescreened lists or data.

(c)     The mailer states Haydu is "pre-selected" and further indicates "[t]his 'prescreened' offer of credit is based on information in your credit report indicating that you meet certain criteria." However, in the small print disclosures, LendBee conversely represents it has no control over participating lender creditworthiness eligibility criteria.

24.     On or about July 24, 2023, Haydu called the phone number listed on the mailed solicitation to accept the sham firm offer of credit.

25.     Haydu spoke with Alex Tambouly, ("Tambouly"), a representative of Amity One, which is a debt settlement company that does not engage in making loans. Tambouly feigned offering a

consolidation loan at first, but instead pitched a debt settlement program where he represented Haydu would get out of debt in 48 months.

26. Tambouly and his co-conspirators never intended to make a loan to Haydu based on the mailed solicitation.

27. The sole marketing purpose of the mailer was to trick Haydu into calling in an attempt to obtain a loan, only to then market a debt settlement program on behalf of Amity One and Guardian.

28. Amity One partners with Guardian Litigation Group to perform an "attorney model" debt settlement program.

29. LendBee, Amity One and Guardian partnered to advertise a consolidation loan through a direct marketing campaign in order to entice Haydu to call on the solicitation, but instead marketed debt adjustment or debt settlement products and services. This is the classic and illegal "bait and switch" method of marketing.

30. LendBee, Amity One and Guardian never intended to offer a loan to Haydu. The solicitation itself was a guise to obtain a targeted list from a consumer reporting agency as it is unlawful to obtain consumer reports for the purpose of marketing debt settlement services.

31. LendBee and its co-conspirator Amity One and Guardian could not legally lend Haydu the loan as advertised in the purported firm offer of credit as neither have lending licenses in Ohio that would permit them to do so.

32. LendBee also indicates within its mailed solicitation that it has no control over the participating lender's creditworthiness eligibility criteria. However, the FCRA defines a "firm offer of credit" as "any offer of credit or insurance to a consumer that will honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer." Defendants' mailer did not meet the definition

of a "firm offer of credit" in that it had no pre-established lending criteria and mentions this multiple times in its solicitation.

33. Amity One likewise does not offer loans. Haydu called the number on the LendBee mailer, but was connected to Tambouly, a representative of Amity One, which is a debt settlement company, not a lender.

34. It is unlikely that Defendants made any attempt to obtain a loan on behalf of Haydu as Haydu did not receive any notifications from any lenders, including but not limited to, an adverse action letter.

35. All Defendants are necessary components of this conspiracy - LendBee obtained the prescreened lists and arranged for the marketing. Assent Mortgage, dba LendBee, is in a unique position to obtain a prescreen lists as it is in the mortgage lending industry. However, Assent Mortgage, dba LendBee, knew, when it partnered with Amity One and Guardian that the prescreened lists it obtained from consumer reporting agencies would be used to market debt settlement, and not to make a firm offer of credit. Amity One and Guardian had full knowledge of this scheme as well and were willing co-conspirators motivated obtaining new debt settlement clients, and in turn, larger profits.

36. All Defendants knew, or should have known, that the data used in the marketing originated at a consumer reporting agency.

37. All Defendants knew the solicitation, as it exists and as it is described by LendBee, was not a firm offer of credit, and that Defendants did not have the intent to honor the loan terms as offered in the mailer.

38. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

39.     Plaintiff did not authorize Defendants to access his consumer report information prior to the mailer being sent to him.

40.     Defendants are responsible for any of the actions of its agents under the doctrine of *respondeat superior*.

**COUNT ONE**
**Violation of the Fair Credit Reporting Act**
**Willful Noncompliance, 15 U.S.C. § 1681n**

41.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

42.     Plaintiff is a "consumer" as defined by the FCRA, 15 U.S.C. § 1681a(c).

43.     Defendants, alone or through a marketing agent, obtained information and data on Plaintiff's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living from a "consumer reporting agency" as defined by the FCRA, 15 U.S.C. §1681a(f).

44.     The marketing agent then disclosed Plaintiff's most private consumer reporting data to Defendants in order to use in Defendants' marketing campaign.

45.     All Defendants illegally accessed Plaintiff's consumer report for the purposes of marketing a debt settlement program, and all Defendants knew Haydu, and any reasonable person, would be harmed by this invasion of privacy.

46.     The information is therefore a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

47.     Defendants willfully obtained and used Plaintiff's consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681n.

48.     Defendants willfully obtained and used Plaintiff's consumer reports to utilize the information for marketing debt settlement services. Under section 607 of the Fair Credit Reporting

Act, it is clearly stated that the purpose for which a consumer report is sought must be certified, and that it must be further certified that the information will be used for no other purpose 15 U.S.C. § 1681e.

49. Obtaining and using a consumer report for marketing is an impermissible purpose in violation of the FCRA, 15 U.S.C. § 1681b(f).

50. Due to Defendants' conduct, Plaintiff has suffered actual damages by Defendants' invasion of his privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages and embarrassment upon learning that his most private financial data had been accessed and reviewed by companies and individuals that had no right to such information.

### COUNT TWO
### Violation of the Fair Credit Reporting Act
### Negligent Noncompliance, 15 U.S.C. § 1681o

51. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

52. Defendants negligently obtained and used Plaintiff's consumer reports without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

53. The information obtained is a "consumer report" as defined by the FCRA, 15 U.S.C. §1681a(d).

54. Defendants negligently obtained and used Plaintiff's consumer report without a permissible purpose in violation of 15 U.S.C. §§ 1681b and 1681o.

55. Due to Defendants' conduct, Plaintiff has suffered actual damages by Defendants' invasion of his privacy, including, but not limited to, mental and emotional hardship, physical, mental and emotional stress, anxiety, monetary damages, and embarrassment upon learning that his most private financial data had been accessed and reviewed by companies and individuals that had no

right to such information.

### COUNT THREE
### Violation of the Fair Credit Reporting Act
### False Pretenses--15 U.S.C. § 1681q

56.     Plaintiff repeats, realleges, and incorporates by reference, as though set forth herein, the prior paragraphs of this Complaint.

57.     Defendants accessed Plaintiff's consumer reports under false pretenses.

58.     Defendants violated the FCRA by knowingly and willfully procuring information on Plaintiff under false pretenses, 15 U.S.C. § 1681q.

59.     15 U.S.C. § 1681q has a private cause of action under 15 U.S.C. § 1681n.

60.     All Defendants acted knowingly and willfully. Defendants' willful conduct is illustrated by the following:

(a)     The FCRA was enacted in 1970; Defendants have had over 50 years to become compliant;

(b)     Defendants violated a clear statutory mandate set forth in 15 U.S.C. § 1681q;

(c)     All Defendants knew that they had no intention of, making a firm offer of credit. Similarly, the individual Defendants knew the consumers responding to the mailers had no business relationship with Defendants, were not being offered a credit transaction, but instead were being offered debt settlement services.

(d)     Defendants systematically procured consumer information without permissible purposes despite myriad statutory text and guidance.

(e)     By adopting such a policy and practice, Defendants voluntarily ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless.

61.    Plaintiff is entitled to Statutory damages of not less than $100 and not more than $1,000 for each and every one of these violations, pursuant to 15 U.S.C. § 1681n(a)(1)(A). Plaintiff is also entitled to punitive damages for these violations, pursuant to 15 U.S.C. § 1681n(a)(2). Plaintiff is further entitled to recover his costs and attorneys' fees, pursuant to 15 U.S.C. § 1681n(a)(3).

## COUNT FOUR
### Violations of the Ohio Consumer Sales Practices Act

62.    Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

63.    The interactions between Plaintiff and Defendants were a "consumer transaction" as defined by R.C. § 1345.01(A) as Defendants solicited a service to Plaintiff, an individual, for purposes that are primarily personal, family or household. Defendants did this by mailing Plaintiff a solicitation to procure their business. The purpose of the mailed solicitation was personal in nature and Defendants solicited Plaintiff to provide him services for his personal debt in exchange for various fees.

64.    The mailers sent to Plaintiff as well as the ensuing telephone sales pitch for debt settlement services were riddled with deceptive and fraudulent representations.

65.    Defendants are "suppliers" as defined by R.C. § 1345.01(C) as it engaged Plaintiff in the soliciting of a consumer transaction by attempting to procure Plaintiff's business by sending him mailed solicitations in an attempt to provide Plaintiff with debt adjustment/debt settlement services in exchange for various fees.

66.    Plaintiff is a "consumer" as defined by R.C. § 1345.01(D) as he engaged in consumer transactions with Defendants, a supplier. Defendants solicited Plaintiff via the mailer attached as Exhibit A to this Complaint and invited them to call.

67. All parties are a "person" as defined by R.C. §1345.01. A person includes an individual, corporation, government, governmental subdivision or agency, business trust, estate, trust, partnership, association, cooperative, or other legal entity. Plaintiff is a person and Defendants, a legal entity, is also a person.

68. Defendants committed material unfair, deceptive, and/or unconscionable acts and practices in connection with a consumer transaction, primarily for personal, family or household purposes, in violation of the Ohio Consumer Sales Practices Act, including, but not limited to:

(a) Making false or misleading statements to induce a purchaser to pay for services in violation of R.C. § 1345.02(A).

(b) Knowing of the inability of the consumer to receive a substantial benefit from the subject of the consumer transaction.

(c) Using a sales presentation which makes the material facts of the offer misleading or conveys or permits an erroneous impression as to the services offered for sale.

(d) Defendants violated O.A.C. 109:4-3-03(B)(2) and engaged in deceptive acts or practices in connection with a consumer transaction because the first contact it had with Haydu was secured by through deception when Defendants sent a misleading letter to Plaintiff.

(e) Defendants violated O.A.C. 109:4-3-10(A) and engaged in deceptive acts or practices in connection with a consumer transaction because Defendants made representations, claims, or assertions of fact about the status of Plaintiff's debt balances, monthly payments, interest rates and high balance revolving debt in an effort to convince a reasonable consumer to call immediately and retain Defendants' services.

69.     Plaintiff was in fact deceived by the alleged violations and as a result of the preceding violations by Defendants, Plaintiff has suffered injury in the form of mental and emotional hardship, physical, mental and emotional stress, anxiety, embarrassment and monetary damages caused by the deceptions in the mailers previously described in this Complaint.

### COUNT FIVE
### Fraud

70.     Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

71.     Fraudulent conduct has been specifically alleged throughout this Complaint and incorporated into Count Five by reference. Plaintiff specifically relied on the aforementioned representations, misrepresentations, non-disclosures and implied representations when making the determination whether to contact LendBee and provide LendBee and its coconspirators with access to his consumer reports and other private financial data.

72.     The Defendants' entire scheme is to mislead. It misled the consumer reporting agency by obtaining protected FCRA data under false pretense, and it misled Haydu by tricking him into calling and disclosing additional data under the false pretense of offering a consolidation loan.

73.     Specifically, Haydu relied on all representations in Exhibit A in deciding to call LendBee. These representations include, but are not limited to, the fact that he was invited to apply for a consolidation loan, when, in fact, Defendants were only interested in marketing debt settlement services.

74.     The Defendants' representations concerning the work it claimed it would perform were made falsely, with knowledge of their falsity, or with such utter disregard and recklessness as to whether the representations were true or false that knowledge may be inferred.

75.     The representations were made with the intent of misleading Plaintiff into relying upon them so Defendants could obtain money from Plaintiff, as well as access to his consumer report.

76. Plaintiff was justified in relying upon the Defendants' representations. Plaintiff has been injured by the wrongful and fraudulent conduct of Defendants and has been damaged in an amount to be established at trial, as well as entitled to punitive damages in an amount to be established at trial.

## COUNT SIX
## Civil Conspiracy

77. Plaintiff repeats, realleges, and incorporates by reference all of the foregoing paragraphs.

78. LendBee conspired with Amity One and Guardian to illegally obtain and use data protected by the FCRA. The Defendants committed further crimes when they conspired to use the illegal data in a deceptive fashion. All Defendants knew the marketing scheme was both criminally and civilly illegal and they were joint actors and conspirators in the illegal marketing scheme.

79. The combined acts of Defendants have resulted in damages to Plaintiff in the form of an invasion of privacy and the emotional damages resulting from such an invasion.

80. The combination of Defendants' actions and conduct as alleged herein constitute a civil conspiracy by way of an unlawful act independent of the conspiracy, namely fraud and the criminally illegal acts in violation of both the FCRA and the OCSPA resulting in an invasion of privacy.

## COUNT SEVEN
## Violations of the Equal Credit Opportunity Act

81. While Plaintiff does not believe Defendants intended to offer a loan, should Defendants demonstrate they did make a firm offer of credit that was then denied for permissible reasons as outlined in the FCRA, then it violated the Equal Credit Opportunity Act.

82. Defendants are a "creditor" as defined in 15 U.S.C. § 1691a(e) as it extended credit to Haydu via mail; Defendants regularly extend credit and make credit decisions, including rejecting

customer credit applications.

83. Haydu is an "applicant" as defined in 15 U.S.C. § 1691a(e) as he applied directly to LendBee, Amity One and Guardian via telephone following the pre-approved offer that arrived in the mail.

84. LendBee and/or its partner Amity One and Guardian failed to issue an adverse action notice following the denial of credit to Haydu within 30 days of the denial as stated in Reg. B 12 C.F.R.§ 202.9(a)(1)(i).

85. The foregoing acts and omissions of Defendants constitute a violation of the ECOA.

86. As a result of Defendants' violation of 15 U.S.C §1691 *et seq.*, Haydu is entitled to an award of up to $10,000.00 in punitive damages for each violation pursuant to 15 U.S.C §1691.

87. Haydu is also entitled to and seeks injunctive relief prohibiting such conduct in the future.

### Prayer for Relief

ACCORDINGLY, Mr. Haydu requests this Court grant any or all of the following relief:

    a. Actual damages for items including emotional distress, mental anguish, frustration, humiliation, and embarrassment.

    b. Statutory damages in an amount to be determined at trial.

    c. Punitive damages in an amount to be determined at trial.

    d. Costs and attorney fees as provided by statute.

    e. Declaratory and injunctive relief as appropriate.

    f. Any other relief the Court deems just.

Respectfully submitted:


/s/ Jeremiah E. Heck
Jeremiah E. Heck (0076742)
David B. Schultz (0077281)
Luftman, Heck & Associates, L.L.P.
6253 Riverside Drive, Suite 200
Dublin, Ohio  43017
Phone: (614) 224-1500
Fax: (614) 224-2894
jheck@lawLH.com
*Attorneys for Plaintiff*

/s/ Brian M. Garvine
Brian M. Garvine  (0068422)
LAW OFFICE OF BRIAN M. GARVINE, LLC
5 East Long Street, Suite 1100
Columbus, Ohio 43215
Tel: (614) 223-0290; Fax: (614) 221-3201
Email: brian@garvinelaw.com
*Attorney for Plaintiff*


**DEMAND FOR JURY TRIAL**

Please take notice that Plaintiff, Michael Haydu, demands trial by jury in this action.



/s/Jeremiah E. Heck
Jeremiah E. Heck (0076742)

 **LendBee**

Michael,

You are pre-selected for **BIG SAVINGS!**

michaelhaydu.mylendbee.com

Personal Code:
**EB5GSE**



TO THE ORDER OF  Michael Haydu
438 N Rhodes Ave
Niles OH 44446-3824

Want to be debt-free? Call **866-255-3783** now.

---

**SAMPLE LOAN AMOUNT:**

## $25,000.00

**MONTHLY PAYMENT**
48 Month Term

## $586

**INTEREST RATES**
As Low As

## 5.99%

CALL
**866-255-3783**

michaelhaydu.mylendbee.com

Personal Code:
**EB5GSE**



See reverse side for important program disclosures.

---

Michael,

We have buzzworthy news! You have been pre-selected for a personal loan through LendBee.

**What opportunities will you embrace once you start saving hundreds of dollars each month?**

Increase your retirement fund? Take a vacation? Buy a new car?

Current credit card interest rates are at an all time high, most significantly for subprime borrowers. This results in a shocking loss of monthly income to interest.

Hundreds of lenders will swarm you with cheap emails and impersonal digital advertisements. They'll promise you honey, but their terms leave a sting. We're reaching out to you personally.

**LendBee** provides you with a personal touch. We work with you to genuinely understand your needs and circumstances so we can better meet your loan goals.

You can expect:

- Expert guidance
- Competitive rates
- Quick access to money you need

Call today and join the **tens of millions** of applicants seeking personal loans through LendBee!
Sincerely,

Loans Dept.
LendBee

---

You can choose to stop receiving "prescreened" offers of credit from this and other companies by calling toll-free 1-888-567-8688. See PRESCREEN & OPT-OUT NOTICE on the other side for more information about prescreened offers.

0623-10365



You are pre-selected for a low interest rate *loan, apply today!*

Discover just how much your finances can blossom.
Buzz on over and check us out!

| Call | Personal Code | Visit |
|------|---------------|-------|
| **866-255-3783** | **EB5GSE** | **michaelhaydu.mylendbee.com** |

 LendBee

Disclosure: Unsecured personal loan amounts vary from $1,500 to a maximum of $100,000.

**This correspondence is for an unsecured personal loan referred by Rangeview dba LendBee. Loan requests may be funded by a third party. LendBee has no control over participating lender creditworthiness eligibility criteria. APR/interest rates will vary depending on individual lender terms. Not all will qualify for the maximum loan amount or the minimum interest rate.

LendBee is a lender and also provides loan referral services. LendBee refers you to participating Lenders, to whom you deal directly. For details, questions, or concerns regarding your requested loan, please contact your lender directly. Lenders may perform credit checks in order to evaluate your eligibility. By submitting a request to a participating lender, you are authorizing the lender to independently verify the information you submitted and your creditworthiness. This service and qualified participating lenders are not available in all states. This service does not constitute an offer or solicitation for loan products, which are prohibited by any state law. Void where prohibited.

New Hampshire: All loans made to New Hampshire residents must qualify for a loan amount greater than $10,000.

New Mexico: All loans made to New Mexico residents must qualify for a loan amount greater than $2,500.

PRESCREEN & OPT-OUT NOTICE: This "prescreened" offer of credit is based on information in your credit report indicating that you meet certain criteria. This offer is not guaranteed. If you do not want to receive prescreened offers of credit from this and other companies, call the consumer reporting agencies toll free at 1-888-567-8688; or visit the website at www.optoutprescreen.com; or write: Experian Opt Out, P.O. Box 919, Allen, TX 75013; Equifax Options, P.O. Box 7, Atlanta, GA 40123; TransUnion Opt Out Request, P.O. Box 505, Woodlyn, PA 19094.

0623-10365